# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARCEL JACOBS (#K-59732), ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 05 C 1847 |
| ) | |
| DR. KEVIN SMITH, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, a state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendant, Dr. Partha Ghosh, the medical director at the Stateville Correctional Center, violated the plaintiff's constitutional rights by acting with deliberate indifference to his serious medical needs. More specifically, the plaintiff alleges that the defendant denied him proper medical treatment for his arthritic wrist. This matter is before the court for consideration of the defendant's motion for summary judgment. For the reasons set forth in this order, the motion is granted.

## SUMMARY JUDGMENT STANDARDS

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Vision Church v. Village of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to

the non-moving party. *Walker v. Northeast Regional Commuter Railroad Corp.*, 225 F.3d 895, 897 (7th Cir. 2000).

However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Information Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted).

## FACTS

The following facts are uncontested for purposes of this motion:

The plaintiff is a state prisoner, confined at the Stateville Correctional Center at all times relevant to this action. (Complt., ¶ 5.) The defendant, Dr. Ghosh, is a staff physician and the Medical Director at Stateville. (Decl. of Partha Ghosh, ¶¶ 1-2.) The defendant has held that position since June 2003. (*Id.*, ¶ 2.) [By Minute Order of January 11, 2006, the court dismissed Dr. Kevin Smith as a defendant pursuant to Fed. R. Civ. P. 4(m) for want of service/for lack of personal jurisdiction.]

Prior to the plaintiff's incarceration at Stateville, he was housed at the Joliet Correctional Center, where he developed chronic infectious arthritis. (Complt, ¶ 2.) The condition caused severe swelling in his right middle finger, and eventually spread to his left foot. (Complt., ¶ 3.) The plaintiff was satisfied with his treatment while confined at Joliet. (*Id.*, ¶ 4.)

The plaintiff was transferred to the Stateville Correctional in February 2002. (*Id.*, ¶ 5.)

2

On June 4, 2002, the plaintiff complained to a certified medical technician of pain in his left wrist. (Def.'s Ex. D, 6/4/02 Progress Note.) The CMT noted that there was no sign of trauma or swelling, but placed the plaintiff on the "sick call" list. (*Id.*)

Dr. Smith, who was the Medical Director at Stateville at that time, referred the plaintiff to University of Illinois at Chicago Medical Center for examination and evaluation of his wrist. (Def.'s Ex. D, 6/4/02 Progress Note; Def's Ex. J., referral form).

On October 2, 2002, Dr. Harpinder Ajnani at U.I.C. examined the plaintiff and diagnosed him with asymmetrical oligoarthritis. (*Id.*)

On November 19, 2002, U.I.C. doctors performed a whole body (also known as a triple phase) bone scan. (Def's Exhibit A, Medical Record entry dated November 19, 2002.)

In May 2003, after viewing the plaintiff's bone scans, Dr. Smith told the plaintiff that he would make an appointment for him to return to U.I.C. for further treatment. (*Id.*) Dr. Smith also informed the plaintiff that he was leaving Stateville. (*Id.*)

The defendant Ghosh was hired at Stateville and assumed the position of Medical Director on a full-time basis beginning in June 2003. (Def.'s Ex. C, Affidavit of Partha Ghosh, ¶ 2.)

On June 25, 2003, the defendant informed the plaintiff that an appointment at U.I.C. had been scheduled for him. (Def.'s Ex. F, 6/25/03 Memorandum.)

The plaintiff was examined by doctors at U.I.C. on July 24, 2003. (Def.'s Ex. D, U.I.C. Arthritis Note, dtd. 7/24/03.) On August 18, 2003, an MRI scan was performed on the plaintiff's left wrist at U.I.C. (Def.'s Ex. D, U.I.C. Radiology Note, dtd. 8/18/03.)

The plaintiff was examined by Dr. Bryce Bederka at U.I.C.'s Orthopedics Clinic on September 2, 2003. (Def.'s Ex. D, U.I.C. Orthopedic Note dtd. 9/2/03). A radiographic examination

showed that autofusion between the lunate and radius bones in the plaintiff's left wrist had taken place. (*Id.*, U.I.C. Orthopedic & Radiology Notes dtd. 9/2/03.)

At that time, the plaintiff's medical options were discussed with him. (*Id.*, U.I.C. Orthopedic Note dtd 9/2/03.) His options included: (1) allowing the fusion to remain as it was and progressing to a complete wrist fusion in the radiocarpal joint; (2) surgically completing the fusion; or (3) surgically attempting to restore the plaintiff's range of motion. (*Id.*) The plaintiff was informed that, with restoration of the range-of-motion by surgery, it was unclear how long that surgery would provide him with stable, pain-free range of motion given that his radial lumate joint had automatically fused in the radiolunate joint. (*Id.*) In other words, surgery would probably not prevent the bones from re-fusing. The plaintiff elected to allow the auto-fused joint to remain fused. (*Id.*)

On October 14, 2003, the plaintiff filed a grievance claiming improper medical treatment of his arthritis. (Def.'s Ex. G.) In the grievance, the plaintiff complained that despite his medical history of arthritis, it took Dr. Smith three months to schedule his return to U.I.C. to have the new arthritis in his wrist assessed. (*Id.*) The plaintiff additionally maintained that after he had bone and body scans done in October 2002, the Medical Director refused for about eight months to send him back to U.I.C. to find out the results of those tests and to get proper treatment. (Def.'s Ex. G.) The plaintiff further claimed that as a result of delays in treatment, he had sustained permanent damage to his left wrist. (*Id.*)

On November 3, 2003, a counselor reviewed the plaintiff's grievance. (Def.'s Ex. G.) The counselor noted that the plaintiff had a follow-up appointment scheduled at U.I.C. and that his condition was being treated at Stateville. (*Id.*)

A grievance officer reviewed the plaintiff's grievance on December 11, 2003, and recommended that no further action be taken as it appeared that the plaintiff's medical concerns were being appropriately addressed. (Def.'s Ex. G.) The Warden and Chief Administrative Officer, Kenneth R. Briley, concurred with the grievance officer on December 12, 2003. (*Id.*)

Ghosh sent the plaintiff's counselor a memorandum on December 31, 2003. (Def's Ex. H.) In the memo, Ghosh stated that the plaintiff had been treated at U.I.C.'s Rheumatology Clinic for over one year and that conservative management had been recommended at the plaintiff's last clinic visit. (*Id.*) Ghosh further indicated that Stateville's health care unit was capable of providing the plaintiff's care but that if follow-up visits to U.I.C. were warranted, Dr. Ghosh would arrange them. (*Id.*)

The plaintiff appealed the matter to the Administrative Review Board. The ARB denied the appeal on March 8, 2004. (Def's Ex. C, Appeal.)

## DISCUSSION

There is no genuine issue of material fact and the court concludes that the defendant Ghosh is entitled to judgment as a matter of law. Even assuming that the plaintiff exhausted administrative remedies as to Ghosh, the record does not support an inference that Ghosh acted with deliberate indifference to the plaintiff's serious medical needs. Ghosh cannot be held liable for any errors or omissions on the part of his predecessor.

I. **Exhaustion**

Although the issue is a close one, the court will assume for purposes of this motion that the plaintiff exhausted administrative remedies with respect to any claim against the defendant Ghosh.

5

The Prison Litigation Reform Act of 1996 contains a comprehensive administrative exhaustion requirement. Under that statute, "[n]o action shall be brought with respect to prison conditions ... by a prisoner ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim under Section 1983." *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999).

"When the administrative rulebook is silent, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice-pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). A major purpose of the exhaustion requirement is to give prison administrators prompt notice of problems, so that they may be corrected internally in the first instance and an administrative record developed prior to suit. *See Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); *Smith v. Zachary*, 255 F.3d 446, 450-51 (7th Cir. 2001).

The plaintiff need not specify by name each person against whom he addresses his grievance. *Turley v. Catchings*, No. 03 C 8491, 2004 WL 2092008, at *3 (N.D. Ill. Sep. 15, 2004) (Norgle, J.) The PLRA statute "does not require a prisoner to name each prospective defendant in his grievance, even if the prospective defendant was known to the prisoner when the grievance was written. A prisoner can 'object intelligibly to some asserted shortcoming' without naming or blaming anyone; he might, for example, simply complain to the warden that he hasn't been fed for two days." *Murray v. Artz*, No. 02 C 8407, 2002 WL 31906464, at *4 (N.D. Ill. Dec. 31, 2002) (Kennelly, J.)

6

In the case at bar, the plaintiff's grievance seems to relate entirely to alleged deficiencies committed by former Medical Director Kenneth Smith in 2002 and 2003. According to the plaintiff, doctors told him in September 2003 that due to delays in treatment, the damage done to his wrist was permanent. However, Dr. Ghosh did not become medical director until June of 2003.

In his response to the motion for summary judgment, the plaintiff clarifies that although his grievance was "primarily" against Smith, he also felt Ghosh was also responsible for alleged deficiencies. Especially because Ghosh responded to the plaintiff's grievance, the court will assume for purposes of this motion that the plaintiff satisfied the administrative exhaustion process by alerting Ghosh as to perceived shortcomings in the medical care the plaintiff was receiving.

## II. Deliberate Indifference

Nevertheless, even assuming that the plaintiff did exhaust his administrative remedies, the defendant Ghosh is not liable because there is no evidence that he personally acted with deliberate indifference to the plaintiff's serious medical needs.

The Eighth Amendment prohibits deliberate indifference to the serious medical needs of a prisoner. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). The Seventh Circuit has specifically found arthritis to qualify as a serious medical need. *See Norfleet v. Webster*, 439 F.3d 392, 395 (7th Cir. 2006). The fact that a prisoner received **some** medical treatment does not necessarily defeat his claim; deliberate indifference to a serious medical need can be manifested by "blatantly inappropriate" treatment, *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005) (emphasis in original), or by "woefully inadequate action," *Cavalieri v. Shepard*, 321 F.3d 616, 624 (7th Cir. 2003), as well as by no action at all.

7

It must be emphasized that neither medical malpractice nor a mere disagreement with a doctor's course of treatment amounts to deliberate indifference. *Estelle*, 429 U.S. at 104 (1976); *Greeno*, 414 F.3d at 653. A plaintiff must show that the indifference to his medical needs was substantial; inadequate treatment due to negligence, inadvertence, or differences in judgment between an inmate and medical personnel do not rise to the level of constitutional violations. *Estelle*, 429 U.S. at 106; *Higgins v. Correctional Medical Services of Illinois, Inc.*, 178 F.3d 508, 513 (7th Cir. 1999) (the proper forum for a medical malpractice claim is state court). In order to prevail on a constitutional claim, the plaintiff must establish "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 104; *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002).

In addition, Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). Section 1983 does not create collective or vicarious responsibility. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). *Id.* To be held liable under 42 U.S.C. § 1983, defendants "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Id.* In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery. *Hildebrandt v. Illinois Dept. of Natural Resources*, 347 F.3d 1014, 1039 (7th Cir. 2003).

In this case, the thrust of the plaintiff's grievance, as well as his complaint, is that medical care was delayed between October 2002 and succeeding months, while Kevin Smith was Stateville's

medical director. The plaintiff contends that had his arthritis been treated in its early stages, his condition might not have deteriorated to the extent that it did. In fact, in his response to the court's show cause order of December 6, 2005, the plaintiff specifically stated: "Of the two defendants named in plaintiff's complaint, defendant Smith is the one who was <u>directly responsible</u> for plaintiff's permanent disability. . . . The other defendant, Dr. Ghosh, is . . . only responsible for acts that took place <u>after</u> the plaintiff's permanent injury occurred." ("Plaintiff's Reply to Court's Pending Summary Dismissal," document #30, at p. 1) (emphasis in original).

Of course, the plaintiff's assertion that Smith's inaction was the proximate cause of his permanent disability is completely hearsay; the plaintiff has provided no medical authority for that proposition. But irrespective of whether the plaintiff may have had a cause of action against Smith, the record does not reflect any deliberate indifference on the part of Ghosh. As noted *supra*, Ghosh became medical director on an unspecified date in June 2003. By June 25, 2003, Ghosh informed the plaintiff that he had approved a referral to the U.I.C. and that an appointment at the medical center had been scheduled. The plaintiff went to the U.I.C. hospital on July 24, 2003, at which time an examination and bone scan were performed. An MRI was taken when the plaintiff returned to U.I.C. on August 18, 2003. The plaintiff had another appointment on August 28, 2003, at which time another bone scan was taken.

On September 2, 2003, the plaintiff was taken back to the U.I.C. Orthopedics Clinic. At that time, he was informed that auto-fusion of his wrist bones had taken place. Advised of his options, the plaintiff elected not to undergo surgery.

In short, the plaintiff was taken to outside specialists within a few weeks of Dr. Ghosh's arrival at Stateville. Follow-up examinations were scheduled on multiple occasions, and diagnostic

9

procedures such as an MRI and bone scans were performed. The record reflects that the plaintiff received comprehensive medical treatment once Ghosh became medical director. Any deliberate indifference analysis requires the court to consider the totality of the care provided. *See Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 591 (7th Cir. 1999); *Gutierrez v. Peters*, 111 F.3d 1364, 1774-75 (7th Cir. 1997). Again, while deliberate indifference to a serious medical need can be manifested by inadequate care, the plaintiff's fairly extensive medical records in the case at bar demonstrate that he received constitutionally acceptable medical treatment.

It is most unfortunate that the plaintiff's condition had already deteriorated past the point of reversal by the time Ghosh took over at Stateville. However, the plaintiff can cite only two purported deficiencies on the part of Ghosh. He first points to what he characterizes as a two-month delay in seeing an outside specialist. First, the appointment was made by June 25th of the month when Ghosh took over. Furthermore, any brief delays in receiving medical attention are not actionable under 42 U.S.C. § 1983 under the facts of this case. Where a plaintiff alleges a constitutional violation based on a delay of medical treatment, "the relevant question is whether the delay in access to treatment was so unreasonable under the circumstances as to suggest deliberate indifference." *Myers v. McAuley*, No. 02 C 1590, 2003 WL 22232830, at *13 (N.D. Ill. Sep. 16, 2003) (Coar, J.), quoting *Brown v. Briick*, 92 C 2094, 1995 WL 263488, *7 (N.D. Ill. May 3, 1995) (Nordberg, J.) Here, because auto-fusion in the plaintiff's wrist had already occurred by the time Ghosh became medical director, the court discerns–and the plaintiff can point to–no additional treatment Ghosh might have arranged that could have prevented the loss of cartilage. Furthermore, as the plaintiff ultimately decided to forgo corrective surgery, the brief delay appears to have been without consequence.

10

The plaintiff also argues that Ghosh's failure to meet with or examine him constituted deliberate indifference. However, because the plaintiff was being seen by outside specialists, the court sees no reason why Ghosh should have conducted an independent examination. Moreover, as noted in preceding paragraphs, the plaintiff ultimately elected not to get treatment. The court can discern no benefit to the plaintiff an additional consultation with Ghosh might have conferred.

The plaintiff's argument that Ghosh is engaging in an ongoing denial of medical care is spurious. At the summary judgment stage, the non-movant cannot rely on his pleadings or on conclusory allegations, but must come forth with credible evidence to prove the material facts. Fed. R. Civ. P. 56(c); *Wardell v. City of Chicago*, No. 98 C 2002, 2001 WL 1345960, at *4 (N.D. Ill. Oct. 31, 2001) (Mason, Mag. J.) The court's docket and the website for the Illinois Department of Corrections reflect that the plaintiff is currently confined at the Danville Correctional Center. The plaintiff has provided no basis for inferring that Ghosh is presently involved in the provision of the plaintiff's medical care.

In sum, even assuming that the plaintiff's condition can be attributed to actions or inaction on the part of Smith, and not just the generally progressive and invasive nature of the "infectious arthritis" from which the plaintiff suffers, the plaintiff has adduced no evidence whatsoever as to what Ghosh could have or should have done differently. Where, as here, a physician provides constitutionally acceptable care, his or her inability to effect a final cure is not proof of deliberate indifference. *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996); *Glass v. Rodriguez*, 417 F. Supp. 2d 943, 948 (N.D. Ill. 2006). As many, many sufferers of chronic arthritis are aware, that malady is often a progressively debilitating condition with which many patients must learn to live. A plaintiff can show that a health care provider disregarded a serious medical need "only if the

11

professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). The plaintiff in this case has not met his burden of production. It seems plain that the plaintiff is pursuing a non-actionable claim against Ghosh simply because he was unable to locate and serve Smith.

## CONCLUSION

For all of the above-stated reasons, the court finds that there are no material facts in dispute and concludes that the defendant is entitled to judgment as a matter of law. The court will assume for purposes of this motion that the plaintiff exhausted administrative remedies, that his arthritis is a "serious" condition, and that delays in treatment by former defendant Kevin Smith caused permanent injury. Nevertheless, even viewing the record in the light most favorable to the plaintiff, no reasonable person could conclude that the defendant Ghosh acted with deliberate indifference to the plaintiff's medical needs. Accordingly, summary judgment is granted in favor of the defendant.

If the plaintiff wishes to appeal this final judgment, he may file a notice of appeal with this court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Illinois Dept. of Corrections*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also be assessed a "strike" under 28 U.S.C. § 1915(g). The plaintiff is warned that if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a

claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury. *Id.*

IT IS THEREFORE ORDERED that the defendant's motion for summary judgment [# 47] is granted. The clerk is directed to enter judgment in favor of the remaining defendant pursuant to Fed. R. Civ. P. 56. The case is terminated.

Enter: _____
WAYNE R. ANDERSON
United States District Judge

Date: January 3, 2007